## No. 26168

## The People of the State of Colorado v. Delton John Bergstrom

(544 P.2d 396)

Decided December 22, 1975.                    Rehearing denied January 26, 1976.

John P. Moore, Attorney General, John E. Bush, Deputy, John Stephen Phillips, Assistant, Stuart A. VanMeveran, District Attorney, Larimer County, Loren B. Schall, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Dorian E. Welsh, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant Delton John Bergstrom was convicted for violation of 1971 Perm. Supp., C.R.S. 1963, 40-12-108,[1] the so-called "felon with a gun" statute. In a separate trial, he was found by the jury to be an habitual criminal within the meaning of Colo. Sess. Laws 1972, ch. 44, 39-13-101.[2] He was sentenced to life imprisonment in the state penitentiary. We affirm.

The case arises out of the following events. Appellant was on parole. On February 28, 1972, his parole had been suspended and on June 19, 1972, it was revoked. Thereafter, a parole agent of the Colorado Division of Parole notified the Larimer County Sheriff's office that appellant had absconded from supervision and was wanted. In response, two sheriff's deputies, Officers Urista and Forsythe, proceeded to the trailer where appellant was said to reside. They knocked and were told to enter. Inside, they found appellant and informed him that he was under arrest for parole violation. Appellant requested and was granted permission to put on shoes and a fresh shirt. Officer Urista accompanied him to his bedroom to keep an eye on him while he changed. Upon returning to the living room, appellant reached into his pants pocket and attempted to hand an object to one Gayle Downing, a friend who had just entered the room. Before the transfer could be completed, the officer discovered the object to be a gun, a derringer, of which Downing claimed ownership. The weapon was seized. Though not loaded when taken from appellant's possession, it was operational, as demonstrated by a subsequent police firing.

It was established at trial that appellant had been convicted of robbery, a felony in Colorado, in 1966. The jury returned a verdict of guilty on the charge of possession of weapons by a previous offender.

A second proceeding was thereupon commenced under the habitual criminal statute. The People's evidence showed appellant had been previously convicted of grand larceny in Colorado, in 1963, of automobile theft in Nebraska, in 1964, of simple robbery in Colorado, in 1966, and of burglary in Colorado, in 1967. Appellant took the stand in his own defense to

---

[1] Now section 18-12-108, C.R.S. 1973.
[2] Now section 16-13-101, C.R.S. 1973.

testify that he had not been assisted by counsel in the Nebraska proceeding, and that he did not remember if he had been advised of his constitutional right to counsel. The jury found appellant to be the same person as alleged in all the habitual counts.

Additional facts will be set forth in this opinion insofar as relevant to the contentions of error raised by appellant.

## I.

■ We reject appellant's first argument, that the felon with a gun statute is unconstitutional, for the reasons stated in *People v. Blue, Brown and Ulibarri,* 190 Colo. 95, 544 P.2d 385.

## II.

■ Another of appellant's contentions can also be dismissed briefly — that the imposition of a penalty under the habitual criminal statute violates his right under the Eighth and Fourteenth Amendments to the United States Constitution. We held in *People v. Thomas,* 189 Colo. 490, 542 P.2d 387, that, absent a showing of discrimination based on race or other arbitrary criteria, the selective use of the habitual criminal act does not deny any defendant equal protection of the laws; nor does it constitute cruel and unusual punishment within the meaning of the Eighth Amendment.

■ Appellant argues further, however, that the imposition of the life sentence, with respect to him, is excessively harsh, and hence violates the Eighth Amendment. This argument has no merit. The habitual criminal act has been specifically upheld in spite of its increased penalty provisions. *Bernard v. Tinsley,* 144 Colo. 244, 355 P.2d 1098; *Vigil v. People,* 137 Colo. 161, 322 P.2d 320. The legislature may, within broad limits, decide the penalty for each offense. *People v. Fulmer,* 185 Colo. 366, 524 P.2d 606; *Trujullo v. People,* 178 Colo. 136, 496 P.2d 1026; *Austin v. Denver,* 170 Colo. 448, 462 P.2d 600, *cert. denied,* 398 U.S. 910, 90 S.Ct. 1703, 26 L.Ed.2d 69; *Normand v. People,* 165 Colo. 509, 440 P.2d 282.

## III.

■ Appellant next argues that the trial court erred in failing to declare a mistrial on the ground that certain portions of the prosecution's closing statement were unduly prejudicial and inflammatory because the district attorney referred to the gun in this case as a "Saturday night special or a cop killer." While we do not approve the comment of the district attorney, we do not believe it to be sufficiently prejudicial to warrant reversal. The descriptive terms were used by the district attorney in rebuttal to defense counsel's argument — "There is no evidence that this weapon is some sort of weapon like a garrot, or, as far as I can see, it is just an ordinary small pistol."

Upon objection by defense counsel, the jury was instructed by the court to disregard the district attorney's remarks.

■ At the conclusion of the closing arguments, appellant's counsel moved for a mistrial. The motion was denied. We will not assume that the jurors ignored the court's instruction to disregard the comments by the district attorney, *People v. Jacobs*, 179 Colo. 182, 499 P.2d 615, and under these circumstances we do not find that the court abused its discretion in denying the motion for mistrial. For a somewhat analogous situation, *see People v. Lankford*, 185 Colo. 445, 524 P.2d 1382.

## IV.

■ Appellant's next contention is that the trial court erred in allowing his 1966 robbery conviction to be used both to establish an element of the substantive offense (possession of a weapon by a previous offender) and to enhance punishment under the habitual criminal statute. For this proposition he relies on *State v. Ware*, 201 Kan. 563, 442 P.2d 9, which contains the following language:

"The previous conviction of felonious assault which was relied on as a necessary element and ingredient in order to constitute the offense under the firearms statute (K.S.A. 21-2611), may not be used and relied on to invoke the habitual criminal statute."

This language must, however, be viewed in the context in which it was used. Kansas had a firearms statute (akin to our felon with a gun statute) which provided for imprisonment up to five years for persons previously convicted of one felony, who owned or kept guns. It also had an habitual criminal statute under which a person's second conviction was punishable by not less than double the penalty normally imposed for the offense. There was an obvious conflict between these statutes since anyone convicted under the firearms act was by definition a previous offender, and the firearms conviction rendered him guilty of a second offense which brought the habitual criminal statute into play. To apply the habitual criminal act upon conviction under the firearms act would have had the practical effect of nullifying the penalty provisions of the firearms statute.

No such statutory conflict exists in Colorado. Our habitual criminal statute is not operative unless there are at least two prior felony convictions. Hence, we are not persuaded by the rationale of the Kansas Supreme Court. We agree with the holding in *Hollander v. Warden*, 86 Nev. 369, 468 P.2d 990, where the court refused to follow *State v. Ware* because Nevada's habitual criminal act required (like Colorado's) at least two prior felony convictions. We find no merit to this argument.

## V.

■ Appellant argues that the sheriff's officers lacked probable cause to arrest him, as authorized by 1969 Perm. Supp., C.R.S. 1963 39-17-4(1)(a).[3] Therefore, he argues, the fruits of the illegal arrest, the weapon

---

[3] Since appellant's arrest, the statute has been substantially altered, *see* section 17-1-103, C.R.S. 1973, to conform to the requirements of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484.

seized, and the fingerprints taken should have been suppressed by the trial court. We do not agree. Appellant's parole had been revoked before his arrest. The parole agent was aware of appellant's status as a parole violator and as a fugitive. C.R.S. 1963, 39-18-7(5).[4] This knowledge constituted probable cause for appellant's arrest, which the parole officer had a duty to effect, with or without a warrant. 1969 Perm. Supp., C.R.S. 1963, 39-17-4(1)(a).

▮▮▮ Appellant argues, however, that his arrest was invalid because the arresting officers did not themselves know the circumstances underlying the parole officer's request and thus they did not have probable cause. We reject this argument. Under the "fellow officer rule," the sheriff's deputies were entitled to rely upon and accept the information supplied by the parole officer. By definition in the Colorado Criminal Code, the parole officer is a "peace officer." 1971 Perm Supp., C.R.S. 1963, 40-1-1001(3)(l). No persuasive reason has been advanced why a parole officer should not come within the fellow officer doctrine, as recognized by our decisions in *People v. Hamilton,* 188 Colo. 250, 533 P.2d 919; *People v. Nanes,* 174 Colo. 294, 483 P.2d 958. It follows that since the arrest was valid the evidence obtained in connection therewith was not subject to being suppressed.

## VI.

▮▮▮ Appellant asserts that his 1964 Nebraska conviction for car theft should not have been used for the purpose of enhancing punishment under the habitual criminal act, for the reason the the People failed to prove that the Nebraska car theft would have been a felony if committed in Colorado, as required by section 16-13-101(2), C.R.S. 1973. This section requires that, to be considered for the purposes of enhancement of punishment, the conviction of a crime in another state must be proven to have been a felony if committed within Colorado. *O'Day v. People,* 114 Colo. 373, 166 P.2d 789.

The People have conceded that the Nebraska conviction was neither pleaded nor proved to be a felony if committed in Colorado. However, the error in failing to exclude the conviction from the jury's consideration was harmless beyond a reasonable doubt in view of the undisputed evidence proving three other previous felony convictions in Colorado, in 1963, 1966, and 1967. Crim. P. 52(a); *Bernard v. Tinsley,* 144 Colo. 244, 355 P.2d 1098.

## VII.

Appellant further argues that he was adjudicated an habitual criminal under a repealed statute, and that therefore such conviction was a nullity. The habitual criminal act to which reference was made in the information was codified as C.R.S. 1963, 39-13-1; it had been repealed and

---

[4] Now section 17-1-207(5), C.R.S. 1973.

reenacted effective July 1, 1972. Colo. Sess. Laws 1972, ch. 44 § 39-12-101.[5] This error, argues appellant, was not cured when after the trial the court granted the People's motion to strike the statutory reference as surplusage. Crim. P.7(f).

An information is sufficient if it advises the defendant of the nature and cause of the accusation against him so that he can adequately defend himself. Section 16-5-202, C.R.S. 1973; Crim P.7(c); *Loggins v. People,* 178 Colo. 439, 498 P.2d 1146. Technical defects do not justify reversal unless they prejudice the substantial rights of the accused. *Helser v. People,* 100 Colo. 371, 68 P.2d 543. We have thus held that the statutory reference in the information under which the accused is charged is immaterial to the validity of the information, *People v. Marion,* 182 Colo. 435, 514 P.2d 327; its incorrect citation is not ground for reversal, absent substantial prejudice, *Lucero v. People,* 164 Colo. 247, 434 P.2d 128. No prejudice to appellant was demonstrated here.

We have considered appellant's other arguments, which he contends require reversal. We find them to be without merit.

The judgment is affirmed.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON concur in part and dissent in part.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY dissent in part and concur in part.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON concur in part and dissent in part:

We dissent as to point I of the opinion and concur as to the remainder.

MR. CHIEF JUSTICE PRINGLE dissenting in part and concurring in part:

I respectfully dissent to that portion of the majority opinion which holds that the Habitual Criminal Act in this case was constitutionally applied. In all other respects I concur with the majority opinion.

As pointed out in the opinion, the Appellant was convicted of an offense which was a Class 5 Felony and, if the Habitual Criminal Act were not applied, it would carry only a penalty of an indeterminate to five year sentence. This Court has repeatedly held that the Habitual Criminal Act provides no new crime, but is merely an enhancement of the sentence on the crime for which the person has been convicted. *People v. Thomas,* 189 Colo. 490, 542 P.2d 387; *Vigil v. People,* 137 Colo. 161, 322 P.2d

---

[5] Now section 16-13-101, C.R.S. 1973.

320.

In *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the Supreme Court of the United States noted that punishment in the state prison for a long term of years might be so disproportionate to the offense as to constitute cruel and unusual punishment under the Eight Amendment. *See also Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), *cert. denied,* 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974).

So here it seems to me that imposing life imprisonment under the circumstances of this case, where ordinarily the penalty would be at most five years, is so grossly disproportionate as to constitute cruel and unusual punishment under the Eighth Amendment.

I am authorized to say that MR. JUSTICE DAY concurs in this dissent.