**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Clyde D. CAMPBELL, Defendant–Appellant.**

No. 06CA0582.

Colorado Court of Appeals, Div. I.

Nov. 29, 2007.

John W. Suthers, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Clyde D. Campbell, Pro Se.

Opinion by Judge MÁRQUEZ.

Defendant, Clyde D. Campbell, appeals the trial court order denying his Crim. P. 35(c) motion for postconviction relief. We affirm and remand for further proceedings.

The charges in this case stem from an altercation involving defendant and his then live-in girlfriend (victim). As pertinent here, defendant pointed a gun at the victim and ordered her to undress. The victim responded by saying, effectively, "I'd rather be dead." Defendant then fired a shot next to her.

Defendant was charged with two counts of sexual assault, and one count each of felony menacing, criminal extortion, attempted sexual assault, and failure to leave the premises. Pursuant to a plea agreement, defendant pleaded guilty to one count of felony menacing, one count of criminal extortion, and one count of failure to leave the premises with possession of a weapon. The prosecution dismissed the remaining counts, and the trial court sentenced him to two years of probation.

Less than five months later, the trial court held a probation revocation hearing based on allegations that defendant had violated his probation by retaliating against the victim. Following the hearing, the trial court revoked defendant's probation and resentenced defendant to concurrent terms of one and two years in the Department of Corrections (DOC) for the felony menacing and criminal extortion counts, respectively, and one year in jail on the failure to leave the premises count.

Defendant filed a timely pro se Crim. P. 35(c) motion alleging among other things that (1) his plea agreement was illegal because the charges did not include a domestic violence designation as required by section 18–6–801, C.R.S.2007; (2) the extortion statute is unconstitutionally overbroad; (3) no factual basis existed for the extortion charge; (4) the trial court erred in revoking his probation because the act giving rise to the violation was protected by his constitutional right to free speech; and (5) he was denied due process because police did not perform blood alcohol content testing, which deprived him of exculpatory evidence. The trial court summarily denied the motion, finding that (1) the plea and conviction were not illegal; and (2) defendant did not allege a breach of the plea agreement, had stipulated to the factual basis, and had not asserted a cognizable due process claim. This appeal followed.

## I. Domestic Violence Designation

Defendant first contends that the trial court erred when it accepted his plea without a domestic violence designation as required by sections 18–6–801(3) and 16–21–103(2)–(3), C.R.S.2007. We perceive no reversible error.

For a plea of guilty to be valid, it must be knowingly, intelligently, and voluntarily made. *People v. Pozo,* 746 P.2d 523, 525 (Colo.1987).

Section 16–21–103 (2)(b)(II), C.R.S.2007, provides, in pertinent part, that if a law enforcement agency directly issues a complaint or summons for any charges, the agency "shall identify on the face of such document whether the factual basis for the charge or charges includes an act of domestic violence." Similarly, a district attorney who files any criminal case with the court shall submit any other information a law enforcement agency is required to submit in accor-

dance with subsection (2). *See* § 16–21–103(3).

Section 18–6–800.3(1), C.R.S.2007 defines "domestic violence" to mean "an act or threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship."

Further, section 18–6–801(3) provides:

A person charged with the commission of a crime, the underlying factual basis of which includes an act of domestic violence as defined in section 18–6–800.3(1), shall not be entitled to plead guilty or plead nolo contendere to an offense which does not include the domestic violence designation required in section 16–21–103.... No court shall accept a plea of guilty or nolo contendere to an offense which does not include the domestic violence designation required in section 16–21–103, C.R.S., when the facts of the case indicate that the underlying factual basis includes an act of domestic violence as defined in section 18–6–800.3(1) unless there is a good faith representation by the prosecuting attorney that he or she would be unable to establish a prima facie case if the defendant were brought to trial on the original offense.

Here, the record contains a pretrial domestic violence screening instrument. In addition, it is undisputed that (1) the underlying factual basis of defendant's conviction involved an act of domestic violence because the victim and defendant had lived together for a number of years; (2) neither the complaint nor the written plea agreement included a "domestic violence designation"; and (3) the prosecutor did not represent that he would be unable to make a prima facie case on the original charges.

■ Defendant contends, the People concede, and we agree that accepting defendant's plea when the criminal complaint did not include an annotation indicating that the underlying factual basis for the charges involved an act of domestic violence or, in the alternative, requiring the prosecutor to represent that he or she could not make a prima facie case on the original charge, was a violation of section 18–6–801(3).

■ However, the parties disagree on how that statutory violation affects defendant's plea agreement and subsequent conviction. On the one hand, defendant's sole argument is that the plea should not have been accepted. While he argued before the trial court that his plea was null, void, and unenforceable, on appeal he does not define what relief he seeks. On the other hand, the People argue that the violation was merely technical and can be corrected by remanding the case for the court to amend the mittimus to include the domestic violence designation. We conclude that the violation is technical and remand the case to the trial court to allow the prosecution to amend the complaint to reflect that the charges involved an act of domestic violence. We reach that conclusion for the following reasons.

First, when read together, these statutes require only that the face of the complaint identify that the underlying factual basis of the charges involves domestic violence. They do not specify what the trial court is to do other than not accept a plea that does not include the domestic violence designation. *See People v. Banks*, 983 P.2d 102, 107 (Colo. App.1999) (when two statutes address the same subject matter, courts must attempt to read them together and reconcile them so as to give effect to each statute), *aff'd*, 9 P.3d 1125 (Colo.2000). The statutes do not state what consequences flow from failure to make a domestic violence designation or state that a plea without such a designation is void. They do, however, indicate possible adverse consequences affecting a defendant that follow the entry of such a designation. *See* §§ 16–21–103, 18–6–801(3)–(4), (7); C.R.S. 2007.

Second, the trial court found at the providency hearing that defendant's plea was entered knowingly and voluntarily, and defendant does not contest that finding in his motion in the trial court or in his briefs on appeal. Defendant stipulated to a factual basis for the plea, the parties do not dispute that the underlying factual basis involves an act of domestic violence, and at sentencing, the court found that "[t]his was a particularly ugly and traumatic domestic violence incident." Therefore, we conclude that defen-

dant's plea is valid and constitutional. *See People v. Antonio–Antimo,* 29 P.3d 298 (Colo.2000) (a guilty plea must be voluntarily, knowingly, and intelligently made to be valid and constitutional).

We also conclude that, in accepting the plea, the court essentially treated the complaint as having been amended to include a domestic violence designation. *Cf. People v. Thomas,* 832 P.2d 990, 992 (Colo.App.1991) (failure to formally amend the information did not deprive court of jurisdiction where defendant was correctly advised of the charges). *See generally People v. Carlson,* 72 P.3d 411, 415 (Colo.App.2003) (a "simple variance" occurs when the charged elements are unchanged, but the evidence at trial proves facts materially different from those alleged, and it is immaterial unless it prejudices the defendant's substantive rights).

▪ Third, before accepting a guilty plea, a court must ensure that a defendant "understands the possible penalty or penalties" associated with the plea. Crim. P. 11(b)(4). Thus, the court must apprise the defendant of direct, but not collateral, consequences attending the plea. *Craig v. People,* 986 P.2d 951, 963 (Colo.1999).

▪ Direct consequences are those that have a definite, immediate, and largely automatic effect on the range of possible punishment. *People v. Birdsong,* 958 P.2d 1124, 1128 (Colo.1998). In contrast, a collateral consequence is one that is contingent on a future event or an action taken by some individual other than the sentencing court. *People v. Marez,* 39 P.3d 1190, 1193–94 (Colo. 2002); *People v. Jackson,* 109 P.3d 1017, 1021 (Colo.App.2004).

Here, defendant was advised of the appropriate sentences, including mandatory parole, that he risked receiving upon entry of his guilty plea and he received concurrent sentences of one and two years in the DOC, which comported with the advisement.

Although the trial court did not advise defendant of the fact that repeat domestic violence offenders face increased punishments under section 18–6–801(7), the statute does not require such an advisement, and that fact would not invalidate his plea be-

cause the possible use of a guilty plea in future proceedings is a collateral consequence. *See People v. Marez,* 39 P.3d at 1194 (a plea is not rendered invalid by the mere failure to warn the defendant that his sentence for a subsequent conviction would be enhanced because of the earlier plea); *Craig v. People,* 986 P.2d at 963–64 (mandatory parole is a direct consequence of a guilty plea, but failure to advise of mandatory parole does not always invalidate the plea); *cf. Lucero v. People,* 164 Colo. 247, 253, 434 P.2d 128, 131 (1967) (no error in accepting plea when the information contained an incorrect statutory reference because the error did not affect a material part of the information).

Similarly, although section 18–6–801(1), C.R.S.2007, requires the trial court to order domestic violence screening and treatment for persons found to have been guilty of an offense with an underlying factual basis involving domestic violence, defendant was ultimately sentenced to DOC, making that requirement inapplicable to him. *See* § 18–6–801(2), C.R.S.2007.

Therefore, although defendant was not advised of the implications of a domestic violence conviction, inclusion of that designation on the complaint, as required by section 16–21–103, does not affect a substantial right and does not invalidate the plea.

Section 18–6–801(3) does not provide that the absence of the required designation in the complaint divests the court of jurisdiction. Therefore, because defendant did not object to the form of the complaint, and has not shown how he is prejudiced, we conclude that the technical defect can be corrected by remanding the case to the trial court to allow the prosecution to amend the complaint to reflect that the underlying facts involved domestic violence. *See People v. Metcalf,* 926 P.2d 133, 139 (Colo.App.1996) (Crim. P. 7(e) is to be construed liberally to avoid the dismissal of cases for technical irregularities in an information that can be cured through amendment).

Our resolution of this issue effectuates the purposes of the domestic violence offender tracking statutes, which are to (1) assist law enforcement in tracking repeat domestic vio-

lence offenders, *see* § 16–21–101, C.R.S.2007 (the domestic violence tracking system was enacted to "improve the consistency of data shared by the different elements of the criminal justice system and to allow for the tracking of offenders through the criminal justice system"); (2) increase punishments for repeat offenders, *see* § 18–6–801(7) (offenders charged with an act involving domestic violence which would otherwise be a misdemeanor, who have three times previously been charged with domestic violence offenses, may be adjudicated a habitual domestic violence offender and convicted of a class five felony); and (3) provide standardized treatment programs and continued monitoring of domestic violence offenders at each stage of the criminal justice system to ensure that such offenders will be less likely to offend again, and the protection of victims and potential victims will be enhanced. § 16–11.8–101, C.R.S.2007.

Without a domestic violence designation, it would be difficult for law enforcement personnel and prosecutors to ascertain whether an offender was a repeat domestic violence offender subject to section 18–6–801(7), and provide offenders with the treatment that the legislature intended them to receive. By remanding this case to the trial court to allow the prosecution to amend the complaint here, we will be effectuating the spirit and purpose of the statutes dealing with domestic violence offenders. *See People in Interest of S.B.,* 742 P.2d 935, 938 (Colo.App.1987) (courts should promote the spirit of a statute and not simply the letter of the law).

Thus, we conclude that, when as here, there is no dispute that the underlying factual basis included an act of domestic violence and a defendant is appropriately advised concerning the nature and consequences of his plea such that the placement of a domestic violence designation on the complaint will not alter the defendant's understanding of the agreement, the appropriate remedy for the trial court's technical violation of section 18–6–801(3) is to remand the case to allow the prosecution to amend the complaint to include a domestic violence designation. *Cf. Benavidez v. People,* 986 P.2d 943, 951 (Colo. 1999) (remand is appropriate where plea agreement silent on a required term that can be included on mittimus without affecting defendant's substantial rights).

## II. Constitutionality of Section 18–3–207, C.R.S.2007

Defendant next contends that the criminal extortion statute, section 18–3–207, is unconstitutionally overbroad because it infringes upon protected free speech. We disagree.

Statutes are presumed constitutional, and the party challenging the validity of a statute has the burden of proving its unconstitutionality beyond a reasonable doubt. *People v. Zinn,* 843 P.2d 1351, 1353 (Colo. 1993).

The overbreadth doctrine is used primarily to challenge statutes threatening the exercise of fundamental constitutional rights. *People v. Mason,* 642 P.2d 8, 13 (Colo.1982). A statute is facially overbroad if, in addition to proscribing conduct that is not constitutionally protected, its proscriptions sweep in a substantial amount of activity that is constitutionally protected. *People v. Shepard,* 983 P.2d 1, 3 (Colo.1999). The overbreadth doctrine is applied only as a "last resort." *People v. Hickman,* 988 P.2d 628, 636 (Colo.1999).

In *Whimbush v. People,* 869 P.2d 1245, 1248 (Colo.1994), the supreme court held that the criminal extortion statute then in effect was facially overbroad because it included within its reach both protected and unprotected speech.

As pertinent here, in response to the supreme court's decision in *Whimbush v. People,* the legislature repealed and reenacted section 18–3–207 in 1994 with substantial modifications. *See* ch. 275, sec. 1, § 18–3–207, 1994 Colo. Sess. Laws 1619–20. Thus, the types of protected speech found to be criminalized under the old statute, such as threats of collective action in support of demands by labor unions, or an employee's threatening to quit if not given a raise, *see Whimbush v. People,* 869 P.2d at 1248, are no longer included within the new definition of extortion.

The statute currently provides:

A person commits criminal extortion if:

(a) The person, without legal authority and with the intent to induce another person against that other person's will to perform an act or to refrain from performing a lawful act, makes a substantial threat to confine or restrain, cause economic hardship or bodily injury to, or damage the property or reputation of, the threatened person or another person; and

(b) The person threatens to cause the results described in paragraph (a) of this subsection (1) by:

(I) Performing or causing an unlawful act to be performed; or

(II) Invoking action by a third party, including but not limited to, the state or any of its political subdivisions, whose interests are not substantially related to the interests pursued by the person making the threat.

§ 18–3–207(1), C.R.S.2007.

Here, defendant asserts that the new statute is unconstitutionally overbroad because (1) the supreme court previously determined that the old statute was unconstitutional, and (2) the legislature has still not defined intent. We disagree.

As noted, the language deemed unconstitutional has been removed from the statute. While the word "intent" is not defined in the new version of the statute, that does not necessarily make the statute overbroad. The analysis, rather, turns on the degree to which the statute could be used to prohibit speech that is beyond the reach of governmental regulation. See Whimbush v. People, 869 P.2d at 1247–48.

As section 18–3–207(1) currently reads, to commit criminal extortion, an actor must do three things: (1) make a substantial threat to another person; (2) make the threat without legal authority, and with the intent to induce the other person against that person's will to either perform an act, or refrain from performing a lawful act; and (3) threaten to cause the result—that is, the economic hardship, bodily injury, or damage to property or reputation—by either performing or causing an unlawful act to be performed, or invoking action by a third party whose interests are

not substantially related to the interests pursued by the person making the threat.

It is that third requirement—the threat to cause the result by performing an unlawful act or invoking the action of a third party—which limits the statute's applicability and reduces the risk that the statute criminalizes otherwise protected speech. Therefore, the statute is less likely to prohibit protected speech.

We conclude that section 18–3–207(1) does not include within its reach protected speech, and therefore, is not unconstitutionally overbroad. See People v. Batchelor, 800 P.2d 599, 601 (Colo.1990) (statutes are not unconstitutional because of facial overbreadth unless the overbreadth is "not only real but substantial as well, judged in relation to the statute's plainly legitimate sweep" (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973))).

■ Where a statute is not impermissibly overbroad, a challenger must show that the statute is unconstitutional as applied to his or her conduct. People v. Baer, 973 P.2d 1225, 1231 (Colo.1999). However, defendant has not argued that the statute is unconstitutional as applied to his conduct. Thus, we conclude that the extortion statute is not constitutionally overbroad.

### III. Due Process Claims Prior to Entry of Plea

■ Defendant next contends that the trial court and the police violated his due process rights prior to his trial. Because the entry of a guilty plea operates as a waiver of all nonjurisdictional defenses, we conclude that defendant waived his right to raise these claims when he pleaded guilty. See People v. Sandreschi, 849 P.2d 873, 875 (Colo.App. 1992).

### IV. Factual Basis for the Extortion Count

Because defendant stipulated to a factual basis for his guilty pleas at his providency hearing, we likewise reject defendant's contention that no factual basis existed for the extortion count. See People v. Rockwell, 125 P.3d 410, 418 (Colo.2005) (the factual basis is the conduct of the defendant that makes him

guilty of a crime as determined by a court from the facts admitted, stipulated to, or found by a jury).

### V. Remaining Contentions

Last, defendant contends that the trial court erred in revoking his probation based on hearsay evidence and statements he made that are constitutionally protected as free speech. However, because the record on appeal does not contain the transcripts from the probation revocation proceeding, and it is the appellant's duty to provide those portions of the record necessary to substantiate the claims of error on appeal, *Till v. People*, 196 Colo. 126, 127, 581 P.2d 299, 300 (1978), we reject defendant's contention. *See People v. Bishop*, 7 P.3d 184, 188 (Colo.App.1999) (in

the absence of an appropriate record substantiating defendant's claim, we must presume that the trial court's ruling was correct).

The order is affirmed, and the case is remanded to allow the district attorney to amend the complaint to comply with section 16–21–103(2)(b)(II).

Judge DAILEY and Judge PLANK *, concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2007.